UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMES FAZIO,                           )
                                       )
        Plaintiff,                     )
                                       )
    vs.                                )   Case No. 4:15 CV 807 ACL
                                       )
CAROLYN W. COLVIN,                     )
Acting Commissioner of Social Security, )
                                       )
        Defendant.                     )

## MEMORANDUM AND ORDER

Plaintiff James Fazio brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Fazio's multiple severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

## I.  Procedural History

Fazio protectively filed his applications for DIB and SSI on March 6, 2014, alleging that he became unable to work due to his disabling condition on November 10, 2011.[1]  (Tr. 263-68,

---

[1]  Fazio had previously filed applications for disability benefits under Title II and Title XVI that

285-86, 604-05.)  His claims were denied initially.  (Tr. 287-91.)  Following an administrative

hearing, Fazio's claims were denied in a written opinion by an ALJ, dated January 28, 2015.

(Tr. 12-23.)  Fazio then filed a request for review of the ALJ's decision with the Appeals Council

of the Social Security Administration (SSA), which was denied on March 26, 2015.  (Tr. 8, 1-5.)

Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. §§

404.981, 416.1481.

In the instant action, Fazio claims that the "ALJ's RFC is not supported by substantial

evidence."  (Doc. 16 at 3.)

## II.   The ALJ's Determination

The ALJ stated that Fazio met the insured status requirements of the Social Security Act

through September 30, 2016.  (Tr. 15.)  The ALJ found that Fazio had not engaged in substantial

gainful activity since December 31, 2013.  *Id.*

In addition, the ALJ concluded that Fazio had the following severe impairments:

post-traumatic stress disorder (PTSD), anxiety disorder, and depressive disorder (20 C.F.R. §§

404.1520(c) and 416.920(c)).  *Id.*   The ALJ found that Fazio did not have an impairment or

combination of impairments that meets or equals in severity the requirements of any listed

impairment.  *Id.*

As to Fazio's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to perform a full range

---

were denied by an ALJ on December 30, 2013.  (Tr. 562-77.)  At a hearing before the ALJ on
November 7, 2014, Fazio's counsel acknowledged the prior claims and stated that he was not
asking the ALJ to reopen them.  (Tr. 538-39.)  Thus, the relevant period for consideration of
Fazio's current claim begins on December 31, 2013, the day after the last final denial of his
previous claims.  (Tr. 13.)

> of work at all exertional levels but with the following nonexertional
> limitations:   He can (1) understand, remember, and carry out
> simple instructions; (2) have occasional interaction with
> supervisors, co-workers, and the public; (3) make simple,
> work-related decisions; and (4) tolerate occasional change in work
> location.

(Tr. 17.)

The ALJ found that Fazio's allegations regarding his limitations were not entirely credible. (Tr. 18.)   In determining Fazio's RFC, the ALJ indicated that the opinion of Fazio's treating psychiatrist, Justin Esses, M.D., was entitled to "some, but not great weight."   (Tr. 19.)   She stated that he was giving "great weight" to the opinion of non-examining state agency consultant, Keith L. Allen, Ph.D.   *Id.*

The ALJ further found that Fazio has no past relevant work.   (Tr. 21.)   The ALJ noted that a vocational expert testified that Fazio could perform jobs existing in significant numbers in the national economy, such as stubber, lab equipment cleaner, and laundry worker.   (Tr. 22.) The ALJ therefore concluded that Fazio has not been under a disability, as defined in the Social Security Act, from December 31, 2013, through the date of the decision.   *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits protectively field on March 6, 2014, the claimant
> is not disabled under sections 216(i) and 223(d) of the Social
> Security Act.

> Based on the application for supplemental security income
> protectively filed on March 6, 2014, the claimant is not disabled
> under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 23.)

# III.   Applicable Law

## III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole. . . requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.     The credibility findings made by the ALJ.

2.     The plaintiff's vocational factors.

3.     The medical evidence from treating and consulting physicians.

4.     The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.     Any corroboration by third parties of the plaintiff's impairments.

6.     The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless

of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations."   *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the

appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Fazio argues that the ALJ's RFC determination is not supported by substantial evidence. Specifically, Fazio contends that the ALJ improperly assessed his credibility and discredited the opinion of treating psychiatrist Dr. Esses. Fazio does not challenge the ALJ's determination that his medically determinable physical impairments are not severe. The undersigned will therefore limit the discussion herein to Fazio's mental impairments.

Residual functional capacity is defined as that which a person remains able to do despite his limitations. 20 C.F.R. § 404.1545(a), *Lauer v. Apfel,* 245 F.3d 700, 703 (8th Cir. 2001). The ALJ must assess a claimant's RFC based upon all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. 20 C.F.R. § 404.1545(a); *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995); *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005). A claimant's RFC is a medical question, and there must be some medical evidence, along with other relevant, credible evidence in the record, to support the ALJ's RFC determination. *Id.; Hutsell v. Massanari,* 259 F.3d 707, 711–12 (8th Cir. 2001); *Lauer,* 245 F.3d at 703–04; *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. *Hutsell,* 259 F.3d at 712. However, although an ALJ must determine the claimant's RFC based upon all relevant evidence, the ALJ is not required to produce evidence and affirmatively prove that a claimant is able to perform certain functions. *Pearsall,* 274 F.3d at 1217 (8th Cir. 2001); *McKinney,* 228 F.3d at

863.    The claimant bears the burden of establishing his RFC.    *Goff,* 421 F.3d at 790.

In determining Fazio's mental RFC, the ALJ first found that the record reflects that Fazio has "had improvement in his symptoms with the use of medication and therapy."    (Tr. 18.)    The ALJ stated that Fazio has been taking Klonopin[2] since 1992, and Remeron[3] since 1997 without side effects.    *Id.*    She noted that therapy treatment notes show that Fazio attributes his anxiety to his work when he served in the Air Force.    *Id.*

The record reveals Fazio underwent a counseling evaluation at Creve Coeur Community Counseling on July 19, 2013.    (Tr. 799-805.)    Fazio reported that he sought counseling when he began to have suicidal thoughts a couple of months prior and realized he needed help.    (Tr. 799.) He reported he has anxiety whenever he leaves his apartment and encounters people, has panic attacks when shopping, and becomes depressed when he realizes he is not able to perform even the simplest everyday activity.    *Id.*    Fazio was taking Remeron and Klonopin prescribed from physicians at the VA.    (Tr. 800.)    Fazio reported that he had left his last job as a debt collector in 2011 because the pressure caused him to experience flashbacks to his military experience.    (Tr. 802.)    Fazio reported that he enjoyed running, working out, writing poems, singing, and playing guitar.    *Id.*    Upon mental status examination, Fazio maintained normal eye contact and was generally cooperative.    (Tr. 802.)    It was noted that, when Fazio goes more than one week between sessions, he seems more highly agitated, and talks louder and faster.    (Tr. 803.)    Fazio appeared to have good memory, reported his mood as depressed, his affect appeared concerned, his affect became agitated and anxious after stressful situations, his conversations varied as to coherence, the content of thought tended to focus on physical abuse while growing up and his time

---

[2]    Klonopin is indicated for the treatment of panic attacks.    *See* WebMD, http://www.webmd.com/drugs (last visited August 15, 2016).
[3]    Remeron is indicated for the treatment of depression. *See* WebMD, http://www.webmd.com/drugs (last visited August 15, 2016).

in the Air Force, his cognitive skills were normal, he appeared to have good insight into his current symptoms, and he was capable of managing his financial and personal matters. (Tr. 803.) Fazio was diagnosed with panic disorder with agoraphobia, rule out PTSD, depressive disorder not otherwise specified, and a current GAF score of 35.[4] (Tr. 804.)

In a Status Report dated November 8, 2013, it was noted that Fazio had continued with weekly counseling sessions, and was consistently engaged and cooperative in sessions. (Tr. 79.) Fazio reported "little mitigation of his symptoms" and reported that he remained "depressed, highly anxious, prone to panic attacks, and agoraphobic." *Id.* Fazio also reported increased suicidal ideation in recent weeks, and a specific phobia of dogs after having been bitten by a neighbor's dog several weeks prior. *Id.* It was noted that Fazio reported using cognitive behavioral techniques he had learned from a previous counselor to control his depressive thoughts, which required a tremendous amount of emotional energy to accomplish. *Id.* On October 25, 2013, Fazio reported fatigue and frustration with his attempts at emotional control. In subsequent sessions, he reported increased depression, anxiety, and suicidal ideation. *Id.* On October 28, 2013, Fazio called his counselor and reported concern over suicidal ideation. *Id.* Fazio was instructed to go to the ER if the thoughts continued. (Tr. 80.) Fazio's diagnosis was changed to include a diagnosis of likely PTSD and specific phobia; his GAF score of 35 remained unchanged. *Id.*

Fazio saw VA psychiatrist Dr. Esses on November 22, 2013, at which time he reported

---

[4] A GAF score between 31 and 40 indicates some impairment in reality testing or communication (*e.g.,* some speech is at times illogical, obscure, or irrelevant); or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.,* depressed person avoid friends, neglects family, and is unable to work). *See American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000) ("*DSM IV-TR*").

continued anxiety. (Tr. 929.) Fazio had less panic attacks but more episodes that related to chemical attacks. *Id.* Overall, Fazio felt his therapy was helping and his medications were optimal. *Id.* Upon examination, Fazio's thought processes were normal, he did not report suicidal ideation, his insight and judgment were intact, his memory was intact, his attention and concentration were normal, his mood was anxious, and his affect was calm. (Tr. 930.) Dr. Esses diagnosed Fazio with panic disorder without agoraphobia, rule out PTSD (diagnosis difficult given he cites classified nature of events prevents him from speaking of it), and alcohol abuse in remission. *Id.* Dr. Esses continued Fazio on his current medications and weekly therapy for anxiety. (Tr. 931.)

On February 25, 2014, Fazio presented to St. Joseph Health Center with complaints of suicidal ideation. (Tr. 869.) Fazio reported that he had been having thoughts of suicide the past week, and was feeling depressed, distraught, dysphoric, and anhedonic. *Id.* He indicated that he was doing fairly well until recently when his therapist graduated from a training program and was unable to continue to provide free treatment. *Id.* Fazio had been compliant with his medications. *Id.* He still had nightmares and flashbacks from his service. (Tr. 869-70.) Fazio was diagnosed with PTSD, generalized anxiety disorder, and a GAF of 35. (Tr. 870.) He was admitted for inpatient psychiatric treatment with group therapy, individual counseling, behavior management, and medication management. (Tr. 870.) He was discharged on February 28, 2014, at which time he was assessed a GAF score of 50.[5] *Id.*

Fazio started receiving counseling at Crider Health Center ("Crider") in March 2014, at which time Fazio's mood was "ok", his behavior was appropriate, he was cooperative, his memory was intact, his thought process was logical, and his insight and judgment were fair. (Tr. 1019.)

---

[5] A GAF score of 41 to 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning (e .g., no friends, unable to keep a job)." *DSM IV-TR* at 34.

Fazio reported that he was very isolative and he had gone over a month without going out of the house.  (Tr. 1023.)  He also reported having a PTSD episode almost every day.  *Id.*  Fazio was diagnosed with PTSD, rule out panic attacks, rule out generalized anxiety disorder, rule out major depressive disorder, and a GAF score of 36.  (Tr. 1020.)

Fazio saw Dr. Esses for follow-up on April 11, 2014, at which time he had no suicidal thoughts, but reported anxiety, worry, trouble relaxing, feeling afraid nearly every day, he was avoidant of others, and had difficulty interacting with his roommate.  (Tr. 1040-41.)  Upon examination, Fazio had normal thought processes and thought content, intact judgment, intact memory, intact attention and concentration, and his mood and affect were anxious.  (Tr. 1041.)  Dr. Esses' diagnoses remained unchanged.  (Tr. 1042.)  He continued Fazio's medications, and recommended therapy.  *Id.*

Fazio saw psychiatrist Almas Rahman, M.D., at Crider for medication management on April 21, 2014, at which time he reported doing "ok," although he reported sleep disturbance.  (Tr. 1062-63.)  Fazio's grooming was fair, his eye contact was good, he was cooperative, his attention was normal, his mood was euthymic, his thought content was normal, and his judgment and insight were fair.  (Tr. 1063-64.)  Dr. Rahman diagnosed Fazio with PTSD, and assessed a GAF score of 45.  (Tr. 1064.)  On May 12, 2014, Fazio again reported that he was doing "ok." (Tr. 1056.)  He indicated that he had met with a senator about issues with the VA as they pertain to his disability.  *Id.*  Fazio's grooming was fair, his eye contact was good, his behavior was appropriate, his thought content was normal, and his insight and judgment were fair.  (Tr. 1057-58.)  Fazio's diagnosis remained unchanged.  *Id.*  Dr. Rahman continued Fazio's medications and counseling.  (Tr. 1059.)  On June 9, 2014, Fazio reported that he was worried about his upcoming SSA hearing, his mood had been nervous, he kept to himself at times, he

worried about his finances, and his sleep pattern was variable.   (Tr. 1050.)   Dr. Rahman indicated

that he had recommended an additional medication, but Fazio declined it.   *Id.*   Dr. Rahman

continued Fazio's medications.   (Tr. 1053.)   In a letter dated June 18, 2014, Dr. Rahman stated

that Fazio had been receiving treatment from Crider since 2012 and has been diagnosed with

PTSD with a GAF score of 36.   (Tr. 1081.)   Dr. Rahman stated that, most recently, Fazio's

illness "has been manifesting in the form [of] anxiety, social withdrawal, and difficulty sleeping."

*Id.*

Fazio presented to VA psychiatric nurse practitioner Barbara S. Latal on June 23, 2014,

with complaints of anxiety, depression, sleep difficulties, and nightmares.   (Tr. 1183.)   He

reported occasional suicidal ideation, although he indicated he was able to direct his focus onto

another subject and stop thinking about suicide.   *Id.*   Fazio also reported daily panic-level

anxiety, which increases when he has flashbacks.   *Id.*   He indicated that his flashbacks include

hallucinations.   *Id.*   Fazio was seeing a therapist for cognitive therapy—Doris Irvin.   *Id.*   Upon

examination, Ms. Latal noted decreased eye contact at times, circumstantial speech at times,

impaired concentration, and impaired insight and judgment.   (Tr. 1184.)   Ms. Latal diagnosed

Fazio with panic disorder without agoraphobia and continued his medications.   (Tr. 1185.)

Fazio saw social worker Herbert Lomax, Ph.D., at the VA on the same date for psychotherapy

related to his panic disorder.   (Tr. 1146.)

On July 14, 2014, Fazio's mood was fair, and his sleep pattern was erratic.   (Tr. 1094.)

Dr. Rahman indicated that Fazio had seen a nurse practitioner at the VA, Amy Benson, who

prescribed medications for him; and saw a psychologist at the VA, Dr. Lomax.   *Id.*   Fazio's

diagnosis remained unchanged, and Dr. Rahman continued his medications.   (Tr. 1097.)   On

August 18, 2014, Fazio reported that he had been meeting with Ms. Irvin, which had helped him.

(Tr. 1088.)   He reported paranoia around new people and in stores.   *Id.*   Dr. Rahman suggested

adding a medication, but Fazio declined.   *Id.*   On October 14, 2014, Fazio reported that he gets

paranoid when he is around a lot of people, his sleep pattern is variable, and he has flashbacks at

times.   (Tr. 1082.)   Dr. Rahman continued Fazio's medications.   (Tr. 1085.)

Fazio presented to Ms. Latal on August 27, 2014, at which time he reported he was doing

about the same as when he was last seen.   (Tr. 1154.)   He indicated that he did not leave the

house much except to walk or for appointments, he slept three to four hours a night, he felt

depressed at times, and had passive suicidal ideation.   *Id.*   Upon examination, Ms. Latal noted

Fazio's motor activity was abnormal, his mood was depressed at times, his affect was anxious, he

exhibited decreased eye contact, and his insight and judgment were fair.   (Tr. 1154-55.)   Ms.

Latal increased Fazio's Remeron.   (Tr. 1156.)   Fazio also saw Dr. Lomax for therapy.   (Tr.

1152-53.)   Fazio reported that he had been compliant with his medications, and indicated that

they were beneficial in providing relief from symptoms of anxiety.   (Tr. 1152.)   Fazio reported

continued problems with social isolation, paranoid ideations, and racing thoughts.   *Id.*   Upon

mental status examination, Dr. Lomax noted decreased interest, increased guilt, decreased energy,

decreased concentration, decreased appetite, and decreased psychomotor activity.   *Id.*   Dr.

Lomax stated that difficulties with negative self-talk and negative cognitions have been problems

in Fazio's life and contributed to social isolation and paranoid ideations.   *Id.*   On September 29,

2014, Dr. Lomax indicated that Fazio believed his medications were beneficial in providing relief

from symptoms of panic attacks.   (Tr. 1146.)

The medical evidence discussed above reveals that Fazio received extensive treatment for

his mental impairments, consisting of regular visits to psychiatrists and nurse practitioners for

medication management, psychotherapy, counseling, and cognitive therapy.   While Fazio did

report that his medications helped with his symptoms, the treatment notes demonstrate that Fazio continued to experience significant symptoms including anxiety, social isolation, paranoid ideations, sleep difficulty, flashbacks, and depression despite medication compliance.

The ALJ next discussed the opinion evidence. She noted that Dr. Esses, Fazio's treating psychiatrist at the VA, authored a letter dated August 2, 2013. (Tr. 19, 199.) Dr. Esses stated that Fazio has a long history of symptoms of PTSD, for which he has a history of a psychiatric admission. *Id.* Dr. Esses stated that Fazio's "anxiety is to the degree that it interferes with his ability to communicate effectively in social spheres including employment," and that he would have "substantial limitations in dealing with coworkers and supervisors." *Id.* Dr. Esses further stated that Fazio's "attention, mood, and reliability are affected." *Id.* He indicated that Fazio's prognosis was "guarded" and that he did not expect resolution of Fazio's anxiety in the next twelve months. *Id.* Dr. Esses referred the reader to his "detailed notes dated February 8, 2013 and July 12, 2013 for additional details." *Id.* At Fazio's initial visit in February 2013, Dr. Esses noted that Fazio had been diagnosed with panic disorder by "several psychiatrists over the past decade both here and at the Richmond VAMC." (Tr. 981.) In July 2013, Dr. Esses noted that Fazio had been seeing a non-VA psychologist weekly and has continued anxiety. (Tr. 943.) Fazio discussed traumatic events that occurred during his service, and reported intrusive thoughts, nightmares, and poor sleep. *Id.* Fazio was described as anxious on examination. (Tr. 944.) Dr. Esses diagnosed Fazio with panic disorder without agoraphobia, and rule out PTSD. (Tr. 945.) He continued Fazio's medications, and referred him to a PTSD clinic. (Tr. 945.)

The ALJ stated that Dr. Esses' opinion was "not inconsistent with the medical evidence, which indicates the claimant has anxiety. However, the opinion does not define the claimant's limitations in occupationally relevant terms." *Id.* The ALJ further stated that "there is no

evidence that the claimant would be unable to work if he only had to make simple decisions and had limited contact with others." *Id.* The ALJ assigned "some, but not great weight" to Dr. Esses' opinion. *Id.*

Fazio argues that the ALJ erred in discrediting Dr. Esses' opinion. "'It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749–50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012–13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785–86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F .3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5).

Fazio argues that the ALJ provided insufficient reasons for discrediting Dr. Esses' opinion. The undersigned agrees. First, by the ALJ's own assessment, Dr. Esses' opinion was "not inconsistent with the medical evidence." (Tr. 19.) Second, the ALJ discredited this opinion because Dr. Esses did not define Fazio's limitations in occupationally relevant terms, yet Dr. Esses completed a Mental Assessment of Ability to Do Work-Related Activities ("Assessment") on the same date he authored his letter. (Tr. 201-02.) In his Assessment, Dr. Esses stated that he had seen Fazio in February 2013 and in July 2013. (Tr. 202.) Dr. Esses expressed the opinion that Fazio was capable of performing the following work-related activities "seventy percent or less" of the work day: relate to co-workers, deal with the public, interact with supervisors, deal with work stress, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. *Id.* Dr. Esses indicated that the assessed limitations had existed since Fazio's alleged onset date of November 10, 2011. (Tr. 202.) Finally, he stated that Fazio's prognosis was guarded, as he had experienced symptoms for over ten years they were unlikely to remit. *Id.*

The ALJ failed to discuss Dr. Esses' Assessment defining Fazio's limitations in occupationally relevant terms, suggesting that he did not review this evidence. The ALJ's finding that there was no evidence that Fazio would be unable to work if he only had to make simple decisions and had limited contact with others is not supported by Dr. Esses' Assessment. Dr. Esses found that Fazio was limited in a number of areas that were not adequately accounted for in the ALJ's RFC determination. The ALJ's stated reasons for discrediting Dr. Esses' opinion is not, therefore, supported by substantial evidence.

The ALJ made the following determination regarding Fazio's mental RFC:

He can (1) understand, remember, and carry out simple instructions; (2) have occasional interaction with supervisors, co-workers, and the public; (3) make simple, work-related decisions; and (4) tolerate occasional change in work location.

(Tr. 17.)

Defendant argues that, even if the Court concluded that the ALJ's RFC finding did not incorporate all of the limitations that Dr. Esses assessed, the ALJ's RFC finding is still supported by substantial evidence. Defendant also points out that Dr. Esses had only seen Fazio on two occasions—in February 2013 and July 2013—when he rendered his opinion. Defendant argues that Dr. Esses was not, therefore a treating physician.

"Treating physicians are defined broadly by the regulations as any physician who has provided the claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant." *Dewald v. Astrue,* 590 F. Supp.2d 1184, 1200 (D.S.D. 2008) (citing 20 C.F.R. §§ 404.1502, 416.902). Although Dr. Esses only saw Fazio two times when he provided his opinion, a physician "need not provide treatment at all times to be considered a treating physician." *Id.* In addition, Dr. Esses was a VA psychiatrist, and, as such had access to the record of Fazio's extensive treatment received at the VA. Dr. Esses referred to the fact that Fazio had seen "several psychiatrists over the past decade" at VA facilities. (Tr. 981.) Even if Dr. Esses were only an examining physician, his opinions "were entitled to more weight than nonexamining sources." *Id.* at 1201; 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1).

The only other opinion evidence of record was provided by a non-examining state agency consultant, Keith L. Allen, Ph.D. (Tr. 597.) Dr. Allen expressed the opinion on May 20, 2014, that Fazio was moderately limited in his ability to carry out detailed instructions, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 600-01.) He stated that Fazio "appears capable of performing at least simple, repetitive tasks as otherwise physically able." (Tr. 597.) The ALJ found that Dr. Allen's opinion was consistent with the mental health treatment notes, which show "routine treatment and improvement with

medication." (Tr. 19.) The ALJ noted that Fazio consistently reported that medications helped his symptoms and that he was in an "okay" mood. (Tr. 21.) The ALJ stated that the opinion was also consistent with Fazio's reports that he "tries to keep his mind occupied and self performs cognitive therapy during the day, which suggests he is at least capable of making simple decisions and performing simple, routine tasks." *Id.* The ALJ indicated she was therefore assigning "great weight" to Dr. Allen's opinion. *Id.*

Opinions of non-treating, non-examining sources ordinarily do not constitute substantial evidence on the record as a whole and are generally accorded less weight than opinions from examining sources. *Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir. 2010); *Wildman v. Astrue,* 596 F.3d 959, 967 (8th Cir. 2010). This is especially true when evidence contrary to the non-examining source's opinion exists in the record. *See Davis v. Schweiker,* 671 F.2d 1187, 1189 (8th Cir. 1982). When evaluating the opinion of a non-examining source, the ALJ must evaluate the degree to which the opinion considers all of the pertinent evidence, including opinions of treating and other examining sources. *Wildman,* 596 F.3d at 967; 20 C.F.R. § 404.1527(d)(3) (2011).

As discussed above, the mental health treatment notes do not support the ALJ's finding that Fazio improved with routine treatment. It is true that Fazio reported that his mood was "ok" on some visits and that his medication helped. The Court notes, however, that recognition must be given to the instability of mental impairments and their waxing and waning nature after manifestation. *See Rowland v. Astrue,* 673 F. Supp.2d 902, 920–21 (D.S.D. 2009) (citing *Jones v. Chater,* 65 F.3d 102, 103 (8th Cir. 1995)). "Although the mere existence of symptom-free periods may negate a finding of disability when a physical impairment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of a claim."

*Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996). "Symptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse." *Id.* Given that a claimant's level of mental functioning may seem relatively adequate at a specific time, proper evaluation of the impairment must take into account a claimant's level of functioning "over time." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(D)(2).

In this case, Fazio continued to exhibit significant psychiatric symptoms despite treatment and medication compliance. Similarly, the fact that Fazio attempted to employ cognitive therapy techniques learned during therapy to alleviate his anxiety symptoms does not demonstrate that he is capable of working. In fact, treatment notes indicate that employing these techniques required "a tremendous amount of emotional energy to accomplish." (Tr. 79.)

Fazio also argues that the ALJ erred in finding several pieces of evidence detracted from Fazio's credibility. "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

First, the ALJ stated that the fact that Fazio "has joined a veterans' musical group and plays guitar with them...reflects the claimant has more social abilities than alleged." (Tr. 21.) Fazio argues that the ALJ mischaracterized Fazio's testimony. The undersigned agrees. Fazio testified that he joined a musical group of "veterans that have post-traumatic stress," and that playing guitar helps ease the symptoms of PTSD. (Tr. 549.) Fazio further testified that he does not meet socially with this group because he "can't." (Tr. 555.) Fazio testified that he has "episodes with anybody. I have trouble talking on the phone." *Id.* The fact that Fazio plays guitar with other veterans with PTSD as means of therapy is not a basis to discredit Fazio's allegations of social difficulties.

Fazio next contends that the ALJ erred in using the testimony of Doris Irvin to discredit Fazio's subjective allegations. Ms. Irvin testified at the administrative hearing that she is a hospital intake specialist at Crider. (Tr. 557.) Ms. Irvin stated she has a master's degree in counseling. *Id.* Ms. Crider testified that it is her job to see patients after they come out of hospitalizations and try to engage them in services, and then work with them for stabilization purposes. *Id.* Ms. Crider stated that she thinks Fazio is disabled because "his anxiety is so debilitating for him." *Id.* Ms. Crider explained that, even though she is a counselor and is a "safe place" for Fazio, he still has trouble talking with her sometimes. (Tr. 558.) She stated that Fazio has paranoia, severe depression, suicidal ideation, and difficulty functioning even in his room. *Id.* Ms. Crider stated that Fazio isolates himself because he is fearful of people. *Id.* Ms. Crider testified that she has taken Fazio grocery shopping before, which is a very anxiety-provoking experience for him. (Tr. 559.) She stated that, on one occasion, Fazio became overcome with fear and anxiety when he saw that there were three to four other people in the bread aisle and told her that he could not walk down that aisle. *Id.*

The ALJ stated that the medical evidence of record does not support the debilitating symptoms assessed by Ms. Irvin. (Tr. 20.) The ALJ stated that "[b]y [Ms. Irvin's] own testimony, the claimant is able to interact with her, go outside of his apartment and go to a grocery store, which shows the claimant is capable of social interactions." *Id.* The ALJ misconstrued Ms. Irvin's testimony. Ms. Irvin testified that Fazio has significant difficulties with all social interactions, including his interactions with her. Ms. Irvin stated that Fazio was overcome with anxiety during a trip to the grocery store with her when he saw people in the bread aisle. The fact that Fazio experienced significant anxiety when he went to the grocery store accompanied by a counselor does not show that he is capable of social interactions in a work setting.

The mental RFC formulated by the ALJ is not supported by substantial evidence. The only evidence supporting the ALJ's determination is the opinion of the non-examining state agency consultant, Dr. Allen. The ALJ's finding that Fazio's mental condition improved with medication, based on the fact that Fazio reported an "okay" mood at times, is refuted by the medical evidence as a whole. These records reveal that Fazio continued to experience significant psychiatric symptomatology, including anxiety, paranoia, social isolation, PTSD symptoms, and occasional suicidal ideations. Fazio was hospitalized due to suicidal ideation in February of 2014. Fazio's GAF scores, which were typically in the range of 35 to 50 during the relevant period, are consistent with the serious symptoms observed. Although GAF scores do not have a direct correlation to SSA severity requirements, they may be considered in reviewing an ALJ's determination that a treating source's opinion was inconsistent with the treatment record. *Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013).

In sum, the ALJ relied on factual inaccuracies in discrediting the opinion of Fazio's treating psychiatrist, Dr. Esses, regarding Fazio's limitations. It does not appear that the ALJ reviewed the Assessment provided by Dr. Esses. The ALJ then assigned great weight to the opinion of a non-examining state agency consultant, which was less restrictive than the limitations found by Dr. Esses. The ALJ also discredited Fazio's credibility for improper reasons. The ALJ's mental RFC was based on these erroneous findings. Thus, the ALJ's mental RFC is not supported by substantial evidence.

## V.   Conclusion

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order. Upon

remand, the ALJ shall consider the opinions of Dr. Esses, along with the other evidence of record, perform a new credibility analysis, and formulate a new mental RFC based on the record as a whole.

**/s/** Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2016.